UNITED STATES of America, Appellee,

v.

John M. SMITH, Defendant, Appellant.

No. 81–1273.

United States Court of Appeals,
First Circuit.

Argued Feb. 10, 1982.

Decided June 8, 1982.

Rehearing Denied June 29, 1982.

Ellen K. Wade, Boston, Mass., with whom Henry F. Owens, III., David C. Casey, and Owens & Associates, Boston, Mass., were on brief, for defendant, appellant.

John H. LaChance, Asst. U. S. Atty., Boston, Mass., with whom William F. Weld, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before ALDRICH and BREYER, Circuit Judges, and TORRUELLA,* District Judge.

TORRUELLA, District Judge.

On October 31, 1980, while on the high seas approximately one hundred miles off the Massachusetts coast, the United States Coast Guard cutter ALERT intercepted, boarded and seized the JUDITH LEE ROSE, a United States vessel, and the DIANA CECILIA, an unregistered flagless vessel, while persons aboard them were in the process of transferring a cargo of mari-

* Of the District of Puerto Rico, sitting by desig-    nation.

huana from the DIANA CECILIA to the JUDITH LEE ROSE. All persons aboard both vessels were arrested, among them Appellant John Smith (Smith), who was found on the DIANA CECILIA together with another United States citizen, Joseph Baxley (Baxley), and ten nationals of the Republic of Colombia. All ten persons arrested aboard the JUDITH LEE ROSE were citizens of the United States. Thereafter, Smith was charged with possession of marihuana with the intent to distribute (21 U.S.C. § 955a and 18 U.S.C. § 2) and conspiracy to do the same (21 U.S.C. §§ 955a and 963), and upon his trial and conviction filed the present appeal.

To begin with Smith claims that the charges against him should have been dismissed because Congress in enacting 21 U.S.C. § 955a, lacked the power to extend its criminal jurisdiction to acts committed outside the territorial waters of the United States, on non-United States vessels. In its pertinent parts, 21 U.S.C. § 955a, reads as follows:

"(a) It is unlawful for any person ... on board a vessel subject to the jurisdiction of the United States on the high seas, to knowingly or intentionally ... possess with intent to ... distribute a controlled substance."[1]

Although courts have been reluctant to give extraterritorial effect to penal statutes, *United States v. Bowman,* 260 U.S. 94, 98, 43 S.Ct. 39, 41, 67 L.Ed. 149 (1922), the statute presently in question clearly demonstrates that such application was intended by Congress. Not only does Subsection (a) define the offense in terms of "the high seas", but section 955a(h) provides that said statute "is intended to reach acts of possession, manufacture or distribution *committed outside the territorial jurisdiction of the United States*" (emphasis supplied). *See also* S.Rep.No. 96–855, 96th Cong. 2d Sess. (1980); H.Rep.No. 96–323, 96th Cong. 1st Sess. (1979), U.S.Code Cong. & Admin.News

1980, p. 2785. There is thus no question as to Congress' extraterritorial intentions in the enactment of Section 955a. The issue is one regarding the *power* to so act, in the light of recognized principles of constitutional and international law.

In the present setting Congress exercises jurisdiction over offenses committed beyond the territorial boundaries of the United States pursuant to Article I, Section 8, Clause 10 of the Constitution, which authorizes Congress "to define and punish Piracies and Felonies committed on the high seas, and offenses against the Law of Nations", and under Article III, Section 2 whereby the judiciary is invested with authority over "all cases of admiralty and maritime jurisdiction."

■ Under international law a state does not have jurisdiction to *enforce* a rule of law enacted by it unless it has jurisdiction to *prescribe* the conduct in question. *Rivard v. United States,* 375 F.2d 882 (5th Cir. 1967), *cert. den. sub nom. Groleau et al. v. United States,* 389 U.S. 884, 88 S.Ct. 151, 19 L.Ed.2d 181 (1967). International law recognizes five general principles whereby a sovereign may exercise this prescriptive jurisdiction: (1) territorial, wherein jurisdiction is based on the place where the offense is committed; (2) national, wherein jurisdiction is based on the nationality or national character of the offender;[2] (3) protective, wherein jurisdiction is based on whether the national interest is injured; (4) universal, which amounts to physical custody of the offender; and (5) passive personal, wherein jurisdiction is based on the nationality or national character of the victim. See *Rivard v. United States, supra; United States v. Pizzarusso,* 388 F.2d 8, 10–11 (2nd Cir. 1968), *cert. den.,* 392 U.S. 936, 88 S.Ct. 2306, 20 L.Ed.2d 1395 (1968); *Rocha v. United States,* 288 F.2d 545 (9th Cir. 1961). Our courts have also developed a sixth basis for prescriptive jurisdiction which is referred to as the objective territorial princi-

---

1. See also the definition of "vessel subject to the jurisdiction of the United States on the high seas" at 21 U.S.C. § 955b(d), and *post* in this opinion.

2. See *United States v. Black,* 291 F.Supp. 262, 266 (S.D.N.Y.1968); *United States v. Daniszewski,* 380 F.Supp. 113 (E.D.N.Y.1974).

ple. *United States v. Pizzarusso, supra.* This principle has been defined as including acts done outside a geographic jurisdiction, but which produce detrimental effects within it. Those circumstances support the proscription and punishment of the cause of the harm as if it had been physically present where the effect takes place. *Strassheim v. Daily,* 221 U.S. 280, 285, 31 S.Ct. 558, 560, 55 L.Ed. 735 (1911). The objective territorial principle is distinct from the protective theory in that in the latter all the elements of the crime occur in the foreign country, and jurisdiction exists because these actions have a *potentially* adverse effect upon security or governmental functions, with no actual effect taking place in the country as would be required under the objective territorial principle.

■ Although to some extent all of the above are applicable in some degree to the present circumstances, the objective territorial principle is most in point.[3] As used in Section 955a(a) the term "vessel subject to the jurisdiction of the United States" includes "[any] vessel without nationality or [any] vessel assimilated to a vessel without nationality, in accordance with paragraph (2) of article 6 of the Convention on the High Seas, 1958." *See* 21 U.S.C. § 955b(d). International law, as recognized by the 1958 Convention on the High Seas (Convention) allows any state to extend its authority over a stateless ship. 13 U.S.T. 2313, T.I. A.S. No. 5200, 1958.[4] Since the United States has enacted the customary law of the sea by ratifying the Convention, it has authority to treat stateless vessels as if they were its own, particularly when engaged in conduct affecting United States vessels and having an effect within the jurisdiction of the United States.[5] *United States v. Cortés,* 588 F.2d 106 (5th Cir. 1979). On

this last point, the facts of this case cannot be seen out of context: the marihuana was off-loaded onto a United States vessel whose crew was composed of citizens of the United States, in relatively close proximity to the coast of the United States. Although the cause of the harm is outside the territorial jurisdiction of the United States, its impact within is clear. We thus conclude that 21 U.S.C. § 955a is within the proscriptive power of the United States, as applied in the present case.

■ Appellant next challenges this statute on the grounds that it is "vague and overbroad and fails under the Fifth and Fourteenth Amendment." As Appellant states in his brief, "[v]oid for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." *United States v. National Dairy Corp.,* 372 U.S. 29, 32–33, 83 S.Ct. 594, 597–98, 9 L.Ed.2d 561 (1962). Put differently, if a statute "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden," the statute is void for vagueness. *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954).

■ The statute in question could hardly be more specific as to the prohibited conduct: it emphatically proscribes knowing or intentional possession of defined controlled substances aboard vessels subject to the jurisdiction of the United States with the intention of distributing the same. 21 U.S.C. § 955a. Although we are unaware of any cases deciding this issue regarding Section 955a, various courts have considered and rejected this challenge as applied to similar language in 21 U.S.C. § 841(a)(1).[6] *United*

---

**3.** These principles are not mutually exclusive but may in fact overlap. See *United States v. King,* 552 F.2d 833 (9th Cir. 1976).

**4.** The Convention entered into force and effect as to the United States on September 30, 1962. It merely codified preexisting international law, 13 U.S.T. at 2313, n. 1.

**5.** United States flag vessels are legally an extension of the territory of the United States.

*United States v. Flores,* 289 U.S. 137, 155, 53 S.Ct. 580, 584, 77 L.Ed. 1086 (1933); *United States v. One (1) 43 foot sailing vessel "Wind's Will",* 405 F.Supp. 879, 881, aff'd 538 F.2d 694 (5th Cir. 1976).

**6.** Which reads as follows in its pertinent part: "... [I]t shall be unlawful for any person knowingly or intentionally ... to ... possess

*States v. Gomez-Tostado*, 597 F.2d 170 (9th Cir. 1979); *United States v. Martinez*, 507 F.2d 58 (10th Cir. 1974); *United States v. Wilkerson*, 478 F.2d 813, 815–16 (8th Cir. 1973); *United States v. Rodriguez-Camacho*, 468 F.2d 1220, 1221 (9th Cir. 1972); *United States v. Herrmann*, 371 F.Supp. 343 (E.D.Wis.1974); *United States v. Moses*, 360 F.Supp. 301, 304 (W.D.Pa.1973). Nevertheless, Appellant contends that Section 955a infringes on his right to travel because it fails to give him notice of when "his mere presence on board the DIANA CECELIA [sic] made him criminally liable for possessing, in some constructive fashion, marijuana thereon with intent to distribute it." Put differently, Appellant contends that the statute had to specify the different kinds of possession to which Appellant could be held accountable before he could be charged for any of its different variations (*i.e.*, actual, constructive, sole or joint). Of course this type of specificity is not required any more than it is required of the other language used in the statute, provided it is used in its commonly accepted parlance. From reading the statute in question a person of ordinary intelligence would receive fair notice that since the all-inclusive term "possession" is used, it encompasses all of the various forms whereby possession can be had of an object. *See United States v. PATCO, Local 202*, 678 F.2d 1 (1st Cir. 1982).

This "innocent by-stander" stance is closely related to Appellant's next bone of contention, the alleged insufficiency of the evidence and the failure of the trial court to direct a verdict of acquittal because the evidence allegedly "demonstrated nothing more than defendant's mere presence on board the DIANA CECELIA [sic]."

■ In reviewing a Rule 29 motion the court must consider the evidence as a whole taken in the light most favorable to the Government, together with all legitimate inferences to be drawn therefrom to deter-

mine whether a rational trier of fact could have found guilt beyond a reasonable doubt. *United States v. Patterson*, 644 F.2d 890, 893 (1st Cir. 1981). The Government may prove its case entirely by circumstantial evidence and need not exclude every reasonable hypothesis of innocence, provided the record as a whole supports a conclusion of guilt beyond a reasonable doubt. *United States v. Gabriner*, 571 F.2d 48, 50 (1st Cir. 1978). Furthermore, if the evidence can be construed in various reasonable alternatives, the jury is entitled to freely choose from among them. *United States v. Klein*, 522 F.2d 296, 302 (1st Cir. 1975).

■ As to the conspiracy count, the essential element is the existence of an agreement. *Ingram v. United States*, 360 U.S. 672, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959), which in turn can be inferred from "a development and collocation of circumstances." *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Appellant's quarrel however, is not so much with the finding of the existence of a conspiracy among those aboard the DIANA CECILIA, as with his contention that the Government's evidence was insufficient to prove that *he* was one of the conspirators.

Smith's story,[7] is to the effect that he and Baxley went down to Aruba in March, 1981 from Key West, Florida aboard the vessel MARLENA II. They allegedly went down there to fish. While on route they pulled into Santa Marta, Colombia for engine repairs. Two months later unknown persons hijacked their boat and forced them to take the boat to Rio Hacha, where he and Baxley were put ashore by the hijackers. Thereafter, while in a penurious state, he claims to have accepted a ride aboard the DIANA CECILIA, which was being navigated by his friend Baxley back to the United States with a cargo of marihuana for transshipment to a then unknown contact vessel, which Smith would board for entry into the United States. Appellant alleges that there

with intent to ... distribute ... a controlled substance...."

7. As presented principally through his post-arrest statement to the Coast Guard. Smith did not take the stand or otherwise present any evidence.

is no evidence that he in any way participated in the venture and that the Government's evidence does not show any further involvement in this nefarious enterprise than his "mere presence" at the scene of the crime, a situation which if true concededly fails to meet the elements of criminal responsibility. *Cf. United States v. Hill,* 464 F.2d 1287 (8th Cir. 1972); *United States v. McDaniel,* 545 F.2d 642 (9th Cir. 1976).

In applying the Rule 29 standards previously enunciated, however, a different picture emerges. At the time of the DIANA CECILIA's interception by the Coast Guard, 256 bales of marihuana were in the process of being offloaded onto the JUDITH LEE ROSE. Of the twenty-two persons eventually arrested aboard both vessels, the Coast Guard saw between 12 to 18 on the deck of both vessels actually handling the bales. Since the bales came from the two holds of the DIANA CECILIA, it is not farfetched to presume that persons were in the holds, out of sight, passing the marihuana up to the deck. It is also appropriate to infer that at least one person was at the wheel of each vessel keeping them on station while the operation was underway. It was at the pilot house of the DIANA CECILIA that Smith was in fact arrested together with that vessel's admitted navigator, Baxley. Furthermore, there was sufficient circumstantial evidence from which the jury could conclude that Smith shared an adjacent cabin with Baxley. Additionally, documentary evidence found on Appellant, a piece of paper containing the Panamanian address and telephone number of one of the Colombian crew members, Toribio Diaz, indicates association with at least one of the conspirators prior to the commencement of the voyage. These matters, of course, must again be placed within the context of some additional, obviously pertinent facts: the presence of Smith throughout the entire voyage from Colombia, a major source country for marihuana, to Massachusetts, which is in excess of several thousand miles, in a small flagless vessel stuffed with contraband and contrabandists, proceeding to a rendezvous with a transfer boat from which he would surreptitiously land in the United States.

In the light of all this, Smith's innocent hitchhiking story is inherently unbelievable and we can perceive of no more reason for being taken in by it than was the jury. It was entitled to conclude that no one unconnected with such an enterprise would be allowed to travel on the DIANA CECILIA for 2000 odd miles, in close proximity to crew and cargo, thus receiving intimate knowledge of the participants in a serious crime, and then be allowed to transfer to a United States-bound vessel wherein he would again be privy to additional information regarding another link in this smuggling operation. Although Smith's story is not beyond the pale of possibilities, such is not normally the conduct that one would expect of conspirators engaged in conduct which by its nature is kept secret from outsiders. To think otherwise in the face of this scenario makes little sense. Neither juries nor judges are required to divorce themselves of common sense, but rather should apply to facts which they find proven such reasonable inferences as are justified in the light of their experience as to the natural inclinations of human beings. *See* 1 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 11.11 (3d ed. 1977). Furthermore, if Smith's story were disbelieved by the jury, the jury could conclude that a knowingly false statement is demonstrative of consciousness of guilt on Appellant's behalf. *Cf. United States v. Kilcullen,* 546 F.2d 435, 442 (1st Cir. 1976) (bizarreness of transaction one factor indicating defendant's guilty knowledge).

■ In conclusion, the length of the voyage, the large quantity of marihuana on board, and the necessarily close relationship of Smith with the cargo and crew, particularly with the navigator, Baxley, when taken together with the reasonable inferences that can be drawn therefrom, support a finding that Appellant was a member of the conspiracy for which he was convicted. *United States v. Alfrey,* 620 F.2d 551, 556 (5th Cir. 1980); *United States v. De Weese,* 632 F.2d 1267 (5th Cir. 1980); *United States v. Mazyak,* 650 F.2d 788 (5th Cir. 1981);

*United States v. Cadena*, 585 F.2d 1252 (5th Cir. 1978).

Having established the sufficiency of the evidence in the conspiracy count, we need not waste undue time on the substantive count of possessing the marihuana with the intent to distribute it. Once Smith's participation in the conspiracy was established he became responsible for the criminal acts of the other co-conspirators within the scope of the conspiracy and in furtherance thereof. *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *United States v. Cambindo Valencia*, 609 F.2d 603, 639 (2nd Cir. 1979). Furthermore, Smith having been charged and convicted as an aider and abettor pursuant to 18 U.S.C. § 2, the same evidence supporting his conviction under the conspiracy count also supports the substantive count under this joint venture theory. *United States v. Hathaway*, 534 F.2d 386, 399 (1st Cir. 1976).

Appellant's last contention is based on his allegation to the effect that his arrest was the "fruit of a poisonous tree." *Cf. Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963). In substance, Smith argues that the Coast Guard came upon the DIANA CECILIA and the JUDITH LEE ROSE on the high seas as a result of information received first by the Federal Communications Commission (FCC), and then by the Coast Guard, through the interception of radio communications between said vessels while on the high seas, all in violation of 18 U.S.C. §§ 2510 *et seq.* The district court denied Smith's Motion to Suppress.

The various issues raised by Appellant were recently passed upon by this court in *United States v. Rose*, 669 F.2d 23 (1982), which were appeals of two other defendants involved in the incident which gave rise to the present case. Since the factual and legal issues regarding the interception are substantially the same in *Rose* as in the present case, no further elaboration is required at this time except to say that the district court's actions are affirmed pursuant to the reasoning and holding in *Rose*.

*Affirmed.*