COMMONWEALTH vs. JOHN EDWARD GERMAIN.

Worcester. September 10, 1985. — December 17, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Probable Cause. Search and Seizure,* Probable cause, Affidavit. *Constitutional Law,* Search and seizure. *Robbery. Practice, Criminal,* Argument by prosecutor.

An affidavit was sufficient to justify the issuance of a search warrant under the "two-pronged test" of *Aguilar* v. *Texas,* 378 U.S. 108 (1964), and *Spinelli* v. *United States,* 393 U.S. 410 (1969), see *Commonwealth* v. *Upton,* 394 Mass. 363 (1985), where the fact that the police investigated information given them by an anonymous informant and corroborated that, shortly after a robbery, the defendant was in Worcester, that he rented an apartment at the address supplied by the informant, that he had large amounts of currency, and that he was making large cash purchases, together with the discovery by the police that the defendant had a record of similar crimes, and the informant's detailed description of the gun, clothing, and other items which matched the detailed descriptions of the same items given to police by the victims and which were included in the affidavit, warranted the conclusion that the information supplied by the informant was reliable. [415-418]

At the trial of indictments for armed robbery while masked and for stealing by confining or putting in fear, the evidence, including circumstantial evidence linking the defendant with the robbery, was sufficient to support the jury's conclusion that the defendant was guilty beyond a reasonable doubt. [418-419]

At the trial of indictments for armed robbery while masked and for stealing by confining or putting in fear, the prosecutor's reference in his opening statement to a composite drawing of the defendant which the judge later excluded from evidence did not create a substantial risk of a miscarriage of justice, where the record did not support the defendant's assertion that the opening was made in bad faith, and where the judge gave instructions that the statements of counsel were not evidence. [419-420]

COMPLAINTS received and sworn to in the Worcester Division of the District Court Department on April 9, 1980.

The cases were tried in the Superior Court before *Paul V. Rutledge,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Maureen B. Brodoff,* Committee for Public Counsel Services, for the defendant.

*Lynn Morrill Turcotte,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J.   After trial by jury, the defendant, John Edward Germain, was convicted of armed robbery while masked, see G. L. c. 265, § 17 (1984 ed.) (four complaints), and stealing by confining or putting in fear, see G. L. c. 265, § 21 (1984 ed.) (four complaints).[1] The defendant was sentenced to the Massachusetts Correctional Institution at Cedar Junction for concurrent terms of not less than twelve nor more than twenty years on these convictions. On appeal the defendant alleges error in the denial of his motion to suppress, and his motion for a required finding of not guilty. He also alleges error in the prosecutor's opening statements. We allowed the defendant's application for direct appellate review. We affirm.

We summarize the facts of the robbery. At approximately 10 A.M. on April 5, 1980, an armed, masked man entered the Zayre department store in Worcester and took the daily receipts (approximately $16,000). See note 2, *infra.* The store employees described the robber as a white male of slim build, approximately 5'10" tall with brown eyes and brown curly hair extending about three inches below the mask. Over his face he wore a brown suede mask tied in three places. The robber also wore a brown knit "kid's" hat with an orange stripe, a brown waistline vinyl jacket, a brown plaid shirt, blue worn dungarees, blue "jox" tennis shoes with stripes on the sides and brown work gloves.

---

[1] The defendant also was convicted of unlawful possession of a firearm (two complaints), see G. L. c. 269, § 10 (*a*) (1984 ed.), and unlawful possession of ammunition (one complaint), see G. L. c. 140, § 129C, as amended through St. 1978, c. 551, § 1. These three convictions were placed on file. The defendant asserts that the record does not disclose his personal affirmative agreement to have these convictions placed on file, and therefore we should reverse them as well as the convictions on which sentences were imposed. Because we affirm the convictions on which sentences were imposed, we do not address this issue. See *Commonwealth* v. *Delgado,* 367 Mass. 432, 438 (1975).

The robber carried a small, gray-colored handgun with rust spots on the top of the barrel which he used to force the store manager down stairs to the cash office. There he instructed the manager and four other employees to put white money bags into a cardboard box.[2] After the employees followed his orders, he directed them to an office where the safe was located; there, he emptied the safe of petty cash funds and banded bills. The total amount taken was $11,000 in cash and various tickets and receipts valued at approximately $5,000. The robber left. On his way out, he pulled a telephone cord from the wall. A few minutes later, the employees left the office and called the police. The police arrived at approximately 10:30 A.M. and obtained descriptions of the robber and the details of the robbery.

On April 7 a Worcester police officer received a telephone tip from an anonymous person stating that the defendant was the person who robbed the Zayre store. The officer made an investigation and on April 8 sought and obtained a search warrant. The search of the defendant's apartment yielded several items which were similar to those used by the robber.[3]

1. *The motion to suppress.*[4] Prior to trial the defendant moved to suppress the items taken from his apartment because the affidavit in support of the warrant failed to meet the "two-pronged test" of *Spinelli* v. *United States,* 393 U.S. 410 (1969),

---

[2] The robber took the following items: $11,000 in cash (mostly tens and twenties), Zayre "scratch game" tickets with "#7 week" in the upper left hand corner, charge slips, cash register tapes, white bank deposit bags, and a cardboard box.

[3] The police seized the following items from the defendant's apartment: two automatic pistols, one of which was gray in color with rust spots on the top portion of the barrel (both .32 caliber); two brown suede face masks; two pairs of brown cloth gloves; one brown and orange knitted hat; one pair of sneakers with stripes; one army-style green duffle bag; one brown velour v-neck sweater; one box of 30 rounds of Remington .32 caliber ammunition; and a cartridge magazine with .32 caliber ammunition.

[4] The record indicates that there was an evidentiary hearing on the motion to suppress. We do not consider that evidence because the search was conducted pursuant to a search warrant. Where a warrant is used, the judge may consider only the affidavit or affidavits presented to the magistrate. See *Commonwealth* v. *Monosson,* 351 Mass. 327, 330 (1966).

and *Aguilar* v. *Texas*, 378 U.S. 108 (1964). See *Commonwealth* v. *Upton*, 394 Mass. 363 (1985).[5] The defendant asserts that the affidavit barely passes the basis of knowledge test and totally fails the veracity test. We conclude that the supporting affidavit justified the issuance of the search warrant.

The affidavit sets forth the facts of the robbery and the description of the robber. See 414-415, *supra*. The affidavit also describes the items worn by the robber as follows: a brown knit hat, a suede mask, brown work gloves, brown waistline vinyl jacket, blue "jox" tennis shoes with white stripes on the sides. The affidavit describes the gun carried by the robber as a handgun, gray in color with numerous spots of rust on the top of the barrel.

The affidavit further states that an anonymous informant called a Worcester police officer on April 7, 1980, and told the officer that John Germain was living in Worcester at 9 Barclay Street, first floor; that Germain had committed a robbery at the Zayre department store; and that he was involved in two other armed robberies, at the Professional Pharmacy on Pleasant Street on the sixth and twenty-fourth of March, 1980. The informant said that he had seen in a brown cardboard box in the first floor apartment at 9 Barclay Street numerous white bank deposit bags containing a large amount of currency, a gray-colored handgun with rust stains on the top of the barrel, and a brown suede mask.

The affidavit states that the police spoke with one Amy Antinarella, the owner of the building at 9 Barclay St. She told police that on April 5, 1980, she rented the first floor apartment to the defendant for two months commencing April 1, 1980. The defendant paid $250 in cash. He paid with eight

---

[5] The Commonwealth suggests that there is an issue as to whether we should apply *Commonwealth* v. *Upton*, 394 Mass. 363 (1985). We do not agree. In *Upton*, we held that, under art. 14 of the Massachusetts Declaration of Rights, the test for determining probable cause in cases involving unnamed informants incorporates the principles developed under *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969). Because *Upton* did not announce a new standard but rather retained the traditional standard for testing the sufficiency of an affidavit, it applies to this case. See *Commonwealth* v. *Breese*, 389 Mass. 540, 548-550 (1983).

twenty-dollar bills and seven ten-dollar bills.[6] Antinarella told police that on April 5, 1980, she had observed a large quantity of currency in the defendant's wallet. She also told the police she saw the defendant give his girl friend four hundred fifty dollars in cash to purchase dining room furniture from Antinarella's daughter. The affidavit states that a records check by the police disclosed that the defendant had an extensive criminal record including possession of a .32 caliber revolver and that on October 23, 1978, the defendant had been sentenced to nine months in a house of correction for possession of burglarious tools, breaking and entering in the daytime, and stealing controlled substances (sixteen counts).

"[T]o establish probable cause, an affidavit based on information from an unnamed informant must provide the magistrate with facts showing some of the underlying circumstances leading to the informant's knowledge, as well as his reliability. *Commonwealth* v. *Upton, supra* at 375. See *Aguilar* v. *Texas, supra* at 114. If the informant's tip fails to satisfy one of these portions of the *Aguilar* test, independent corroboration in the affidavit may supplement the informant's tip to support a finding of probable cause. *Commonwealth* v. *Upton, supra.* See *Spinelli* v. *United States, supra* at 415." *Commonwealth* v. *Saleh, ante* 406, 409-410 (1985). "Each prong of the *Aguilar-Spinelli* test — the basis of knowledge and the veracity of the informant — presents an independently important consideration." *Commonwealth* v. *Upton,* 394 Mass. 363, 375-376 (1985).

The defendant argues that there is no basis for concluding that the information provided by the informant is reliable. The defendant contends that the facts that he had cash, that he rented an apartment shortly after the robbery and paid the rent in cash, and that he made purchases with cash are consistent with innocence and these facts do not provide any reason to believe the informant's information was reliable. We do not agree.

---

[6] The record does not disclose the denominations of the bills for the remaining twenty dollars.

The second prong of the *Aguilar-Spinelli* standard may be satisfied by showing either the informant to be credible or his information to be otherwise reliable. *Aguilar* v. *Texas, supra* at 114. The police investigated the informant's information and corroborated the fact that on April 5, 1980, shortly after the robbery, the defendant was in Worcester, that he rented the apartment on the first floor of 9 Barclay Street (the address supplied by the informant), that he had large amounts of currency, and that he was making large cash purchases. Last, the police learned that the defendant had a record of similar crimes (i.e., crimes of theft, possession of a .32 caliber gun, possession of burglarious tools).[7] Further, the informant's detailed description of the gun, clothing, and other items matched the detailed descriptions of the same items given to police by the victims and included in the affidavit. See *Draper* v. *United States*, 358 U.S. 307, 313 (1959). These facts together with the informant's observations support the magistrate's determination of probable cause.

An affidavit for a search warrant also "must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. . . . [T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States* v. *Ventresca*, 380 U.S. 102, 108-109 (1965). See *Commonwealth* v. *Stewart*, 358 Mass. 747, 750 (1971). The motion to suppress was correctly denied.

2. *Denial of the defendant's motion for a required finding of not guilty.* The defendant moved for a required finding of

---

[7] The record of prior convictions is used as a factor because the convictions were recent, and the crimes sufficiently similar to be relevant on the determination of probable cause. See *United States* v. *Harris*, 403 U.S. 573, 583 (1971). In this case the record showed a pattern of conduct from which the inference may be drawn that the defendant was not averse to acquiring property by illegal means and to possessing an illegal weapon (.32 caliber gun). Although these convictions may not be admissible at trial, they may be used to establish probable cause. "[B]efore the trial we deal only with probabilities that are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *United States* v. *Harris, supra* at 582-583, quoting *Brinegar* v. *United States*, 338 U.S. 160, 175 (1949).

not guilty and the judge denied the motion. The defendant argues the circumstantial evidence was insufficient to support a finding of guilty beyond a reasonable doubt. The defendant contends that the evidence linking him with the robbery is too tenuous, since there is no identification of the robber, and too speculative, because others had access to the apartment where the items from the robbery were found.[8] "It is not necessary to prove that no one other than the accused could have done the act. . . . That another might have had the opportunity to do the act goes only to the weight of the evidence." *Commonwealth* v. *Lussier*, 364 Mass. 414, 421 (1973), quoting *Commonwealth* v. *Medeiros*, 354 Mass. 193, 197 (1968). The weight of the evidence is a jury question. See *Commonwealth* v. *Swartz*, 343 Mass. 709, 713 (1962).

3. *The prosecutor's opening.* The defendant contends that the prosecutor's opening statement was improper because he referred to a composite drawing[9] of the defendant which the judge later excluded from the evidence.[10] Because defense counsel failed to object to these statements or to request a curative instruction, we limit our review to a determination of whether there is a substantial risk of a miscarriage of justice. *Commonwealth* v. *Campbell*, 394 Mass. 77, 88 (1985). *Commonwealth* v. *McGahee*, 393 Mass. 743, 749 (1985).

As a general rule counsel is free to state in his opening anything that he expects to be able to prove. See *Commonwealth* v. *Hartford*, 346 Mass. 482, 486 (1963); *Commonwealth* v. *Clark*, 292 Mass. 409, 410 (1935). The record does not support

---

[8] The defendant rented the apartment on the fifth of April for two months commencing April 1. On April 8 the apartment was unoccupied. From April 5 through April 8 the defendant, his girl friend, and various members of his girl friend's family cleaned and painted the apartment.

[9] On the day of the robbery, an employee of Zayre who was not a victim of the crime saw a man answering the defendant's description leaving the main area of the store right after the robbery. The employee assisted the police in making a composite but was not available at the time of trial.

[10] The defendant argues that this was the core of the Commonwealth's case. We do not agree. The core of the case against him consisted of the incriminating items found in the apartment he rented.

the defendant's assertion that the opening was made in bad faith. The reference to the composite was not improper. See *Commonwealth* v. *Weichell*, 390 Mass. 62, 73 (1983), cert. denied, 465 U.S. 1032 (1984). Before the prosecutor's opening and again before the closing arguments, the judge gave strong instructions that the statements of counsel were not evidence. We conclude that the prosecutor's opening did not create a substantial risk of a miscarriage of justice.

*Judgments affirmed.*