**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert Carroll CAMPION,
Defendant-Appellant.**

**No. 77–5114.**

United States Court of Appeals,
Sixth Circuit.

Argued June 22, 1977.

Decided Aug. 17, 1977.

Rehearing Denied Nov. 9, 1977.

Stuart Lyon, Louisville, Ky., for defendant-appellant.

George J. Long, U. S. Atty., James H. Barr, Asst. U. S. Atty., Louisville, Ky., for plaintiff-appellee.

Before CELEBREZZE and ENGEL, Circuit Judges, and WEINMAN,* District Judge.

CELEBREZZE, Circuit Judge.

Robert C. Campion stands convicted, after trial to a jury in federal court, of conducting an illegal gambling business in violation of 18 U.S.C. § 1955.[1] Although Campion raises eight issues on direct appeal, we need only address his first assignment of error which we find to be dispositive. We agree with him that the evidence at trial, viewed in the light most favorable to the Government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), was insufficient to prove beyond a reasonable doubt that he was "an integral participant in the [gambling] business." *United States v. Leon,* 534 F.2d 667, 677 (6th Cir. 1976). We therefore reverse his conviction.

Of nine defendants originally indicted for the gambling offense, only Campion and two co-defendants actually stood trial.[2] The principal evidence ostensibly linking Campion to the illegal enterprise consisted of eight telephone conversations recorded and transcribed from among more than 500 intercepted pursuant to court ordered wiretaps. These wiretaps monitored telephones operated by three of Campion's co-defendants.

---

* The Honorable Carl A. Weinman, Senior Judge, United States District Court for the Southern District of Ohio, sitting by designation.

1. 18 U.S.C. § 1955 provides in part as follows:
   (a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.
   (b) As used in this section—
   (1) "illegal gambling business" means a gambling business which—
   (i) is a violation of the law of a State or political subdivision in which it is conducted;
   (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.
   (2) "gambling" includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.

2. The case against one of the defendants was dismissed after the Court sustained his pre-trial motion to suppress the telephonic evidence against him. Five other defendants entered guilty pleas.

On December 14, 1974, Campion placed a single incoming call to one of the target telephones. During the ensuing conversation he requested the "line" (projected point spread) on one sporting event. On December 16, he placed five incoming calls in which he reported horse race results within approximately one-half hour of the finish of successive races at a number of different out-of-state tracks. On December 16, he also participated in two calls during which he was informed of and commented upon the recent arrest by county authorities of three alleged bookmakers known to him, including two fellow defendants. One of these calls was placed by an unidentified male who terminated the conversation by providing horse race results comparable in format to those reported earlier in the day by Campion.

No direct evidence was introduced to establish that Campion was a bookmaker. The Government's own expert witness called to translate into layman's language the gambling jargon used by the defendants, testified on cross-examination that in no intercepted conversation did Campion place a bet, accept a bet or supply "line" information.[3]

The only other evidence offered by the Government to implicate Campion consisted of two sheets of paper found during a search of one of the tapped telephone locations. Each sheet bore a notation reflecting the payment of $100 for "service" (i. e., the reporting of race results to bookmakers) in two successive weeks, but did not identify the respective payee. Nevertheless, the Government was permitted to argue, in summation to the jury, that these ambiguous documents were proof that Campion had a financial stake in the illegal enterprise.

█ Had other evidence demonstrated that Campion alone provided "service" to the gambling business during the time period in issue, we might be disposed to assign probative value to the Government's inference that Campion was the recipient of the fees. However, the record reveals that other persons contemporaneously reported race results to Campion's co-defendants over the same telephone lines. The possibility that such persons were compensated logically undermines the Government's reliance upon the financial records. In the absence of a tangible link between Campion and the disbursements, we hold that the documentary evidence was irrelevant to the issue of whether Campion "had an interest in the welfare of the business." *United States v. Leon, supra* at 677; Fed.R.Evid. 402.

█ In evaluating the sufficiency of the telephonic evidence standing alone, we are guided by recent precedents from three circuits. When we compare the weight of the evidence held to be insufficient in those cases to the quantum of proof in the record before us, we are persuaded that Campion's conviction must be overturned. In *United States v. Leon, supra,* Judge McCree, speaking for this Court, found that fifteen recorded telephone conversations between co-defendants were insufficient to prove that one of them, Bourgeois, had the requisite concert of purpose with the participants in the gambling venture to warrant his conviction. These conversations revealed that Bourgeois was a bookmaker who habitually exchanged line information as well as bets with the defendant Leon. Nevertheless, Judge McCree viewed this evidence as equally consistent with Bourgeois' exculpatory hypothesis that he was an independent bookmaker as with the Government's assertion that he was an active member of a large gambling enterprise. Although circumstantial evidence alone may sustain a guilty verdict, even if it fails to exclude all reasonable hypotheses consistent with a

---

3. The "line" constitutes the "odds" or "handicaps" or "point spreads" on the wagered contests. This is a list of the terms and events with a certain number of points attributed to the nonfavored team. To win a bet on the favored team, therefore, that team must win by a score exceeding the point spread given to the

nonfavored team. The "line" is subject to change as a given event approaches and a bookmaker may alter the "line" on a particular event in order to try and even out the money wagered on each side. *United States v. Thomas,* 508 F.2d 1200, 1202 n. 2 (8th Cir. 1975).

theory of innocence, *United States v. Scales,* 464 F.2d 371, 373 (6th Cir. 1972), where the jury is called upon to choose between "reasonable probabilities" of equal weight, one innocent and the other criminal, a conviction cannot stand. *See United States v. Delay,* 440 F.2d 566, 568 (7th Cir. 1971).

In *United States v. Todaro,* 550 F.2d 1300 (2d Cir. 1977), the Second Circuit reversed a comparable conviction upon a finding that Todaro's involvement in

* * * furnishing, by means of nine or ten telephone calls, over some twelve days in February 1972, "line" information to the actual bookmakers did not adequately prove that he "*participated* in the *operation* of [the illegal, gambling] business". *Id.* at 1302.

In a similar vein, the Fifth Circuit has observed in *United States v. McCoy*[4] that

* * * not everyone who receives from or transmits line information to a bookmaker is guilty of a § 1955 violation. * * * [I]s there evidence that Bell received [or transmitted] line information *to such an extent* that his behavior *substantially affected* McCoy's business? If not, the convictions cannot be sustained. (emphasis added) 539 F.2d 1050, 1061 (5th Cir. 1976).

In *United States v. Box,* 530 F.2d 1258 (5th Cir. 1976), the Fifth Circuit reversed Box's conviction even though the evidence showed that he had accepted "lay off" bets from co-defendants on a number of occasions. The Court concluded that

* * * the record does not permit [Box] to be cast in a role as a necessary or integral part of a gambling operation * * * We conclude, then, that the jury could not reasonably find the evidence inconsistent with the hypothesis that Box was simply a heavy bettor who on occasion received favorable odds in bets with

bookmakers. For purposes of § 1955, this hypothesis is one of innocence.

530 F.2d at 1268.

The record before us presents less compelling evidence of guilty association than that found wanting in the four cases summarized above. First, there was no evidence that Campion was a bookmaker in his own right. At best, the telephone conversations support an inference that he was a sports bettor. Second, Campion supplied only race results. In contrast to "line" information, which is developed by professional gamblers and is not necessarily available legitimately, race results are broadcast by radio stations and national wire services within minutes of the completion of the events. They are also exhaustively covered in the popular press.[5] Third, Campion's "service" contribution consisted of only five telephone calls made in a single day. Such limited contact with the gambling business comports well with a theory of innocence which would rationalize Campion's conduct as the incidental performance of a favor for some friends. Nothing in the record suggests that Campion's involvement had a significant or sustained impact upon the gambling enterprise.

Even in the extreme case in which *conceded* bookmakers claim, as a defense, that they are independent entrepreneurs,

* * * the mere placing of bets by one bookmaker with another or the mere furnishing of line information *in and of itself* may not be sufficient to establish the interdependence of the bookmakers so as to fuse them into a single business for the purpose of counting each of these participants toward the five persons necessary to establish a violation of § 1955. (emphasis added)

*United States v. Guzek,* 527 F.2d 552, 557–558 (8th Cir. 1975).

---

4. There the court reversed the conviction of the co-defendant *Bell* where the evidence showed that he had received "line" information on four occasions from McCoy and then used it to set his own betting odds (or "line").

5. In *United States v. Kelly,* 328 F.2d 227 (6th Cir. 1964), we held that publications devoted to the reporting of horse race results and future race predictions were exempt from the operation of a criminal statute prohibiting interstate transportation of wagering paraphernalia.

In the light of these precedents, we find the evidence against Campion insufficient to establish that degree of participation in a gambling business required to sustain conviction under the statute.

Reversed.