767 F.2d 922
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
GARY LYNN VERNON, PETITIONER-APPELLANT,
v.
M.C. HAMBY, WARDE, WILLIAM M. LEECH, ATTORNEY GENERAL, STATE
OF TENNESSEE, RESPONDENTS-APPELLEES.
 NO. 84-5594
 United States Court of Appeals, Sixth Circuit.
 6/11/85
 
 M.D.Tenn.
 AFFIRMED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE
 Before: MARTIN and JONES, Circuit Judges; and HOLSCHUH, District Judge.*
 PER CURIAM.
 
 
 1
 Gary Lynn Vernon appeals from the district court's dismissal of his petition for a writ of habeas corpus. The sole issue on appeal is whether there was sufficient evidence from which a rational trier of fact could find Vernon guilty, beyond a reasonable doubt, of two counts of assault with intent to commit murder with resulting bodily injury and four counts of assault with intent to commit murder. Vernon was sentenced to two consecutive life sentences and four sentences of eight to fourteen years, those four sentences to run concurrently with each other but consecutively to the life sentences.
 
 
 2
 Vernon was tried in the Davidson County, Tennessee Criminal Court, and the conviction was affirmed by the Court of Criminal Appeals at Nashville. The Tennessee Supreme Court denied Vernon's application for permission to appeal.
 
 
 3
 The conviction was based on the following evidence. Officers Collier Miller and Connie Tripp responded to a 'shots fired' call on Pillow Street. The investigation at Pillow Street led the officers to 2102 Bransford Avenue, where officers spotted a maroon Nova that matched the description of an auto that had been connected with the Pillow Street incident.
 
 
 4
 Officer Miller testified that he pulled into the driveway at 2102 Bransford and got out of the car. Three males began cursing and yelling at the officers, telling the officers that they had no right to search the car. Officer Miller then went over to the maroon Nova and put his hand on the hood in order to find out whether the engine was still warm. Police Sergeant Williams then arrived and one of the suspects, Barry Vernon, was arrested. Another suspect, Larry Vernon, continued cursing at the officers. He appeared to be intoxicated, and he resisted when officers tried to arrest him. Larry crouched down and put his hands up under his chest to prevent being handcuffed. Officer Miller struck Larry in the back in order to break his resistance. Larry was then handcuffed and put in the patrol car where Barry was being held, but Barry kicked Miller in the face.
 
 
 5
 Other witnesses disagreed with the officers' version of the facts leading up to the arrest of Larry and Barry. Larry testified that the officers beat Barry up for no reason. At least three other witnesses testified that the officers beat Larry and Barry for no apparent reason. This testimony was disputed by the officers. Gary Vernon asserts on appeal that the officers' denials in the face of the contradictory testimony and medical records entered in evidence impugn the officers' credibility.
 
 
 6
 After Larry and Barry had been placed in patrol cars, Officer Tripp saw Gary Vernon running toward the house. Gary slipped and fell near the steps, then got up and went in the front door. Officer Stevens and Mrs. Brenda Bowlin also saw Gary run into the house. Officer Tripp yelled out that Gary had gone into the house. Tripp heard what she thought was a shotgun being loaded, so she yelled out, 'He's got a shotgun! He's got a shotgun! The officers then began to take cover.
 
 
 7
 Immediately after Tripp had warned that someone had a shotgun, a shotgun blast came from the front door of the house. Officers Williams, Stevens, and Sage and Mrs. Bowlin saw a muzzle flash from the front door. After two or more shots were fired from the front door, shots began to come from the front window of the house. Those shots were seen by Officers Miller and Stevens.
 
 
 8
 After the shooting stopped, Officer Miller heard a window break near the back of the house. He saw a male running over a hill near the house. Although Miller had never seen Gary Vernon prior to this incident, Miller testified that the man running from the house was one of the three males who earlier had been in the front yard.
 
 
 9
 Sharon Vernon, the fifteen-year-old sister of Gary, gave a statement to the police on the night of the shooting. At trial, Sharon contradicted much of the contents of the statement, stating that she was confused at the time and that officers threatened to 'lock her up' if she did not give the statement. In that statement, which was admitted into evidence, Sharon said, 'Then I heard some shots sounded like he was shooting through the front door.' When asked who 'he' was, Sharon responded, 'My brother Gary. Because he was the only person in the house. Besides me.' Her statement also indicated, '[T]hen I heard a window break and I hollered Gary and nobody answered. I reckon he went out the window.'
 
 
 10
 Mr. Gerald Patty, who lived about two hundred meters from the Vernon house, testified that after the shots were fired he saw Gary Vernon running away from the house. Mr. Patty had told defense counsel prior to trial that he did not recognize the fleeing person until he saw Gary's picture in the newspaper the following day. At trial, Mr. Patty insisted that he recognized Gary on the night of the shooting and that he had lied to defense counsel because, 'I did not know what to say to you or actually who you were, sir.'
 
 
 11
 The shots fired from the house wounded Officer Sage in the stomach. As a a result, a stayed in the hospital seventeen days and his left leg is paralyzed below the knee. Officer Tripp was grazed in the forehead.
 
 
 12
 It is true that no one saw Gary Vernon fire the shotgun and that the state did not introduce evidence of any fingerprints found on the weapon. Nevertheless, as our review of the evidence indicates, the state produced a substantial amount of circumstantial evidence that Gary pulled the trigger. This court recently has reiterated that a conviction is not invalid merely because it is based entirely on circumstantial evidence. See United States v. Stone, 748 F.2d 361 (6th Cir. 1984). Based upon the record as a whole, viewing the evidence in the light most favorable to the prosecution, we cannot conclude that no rational trier of fact could find Gary Vernon guilty beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307 (1979).
 
 
 13
 The dismissal of the petition is affirmed.
 
 
 14
 JONES, Circuit Judge, dissenting.
 
 
 15
 As the majority notes, the sole issue on appeal is 'whether there was sufficient evidence from which a rational trier of fact could find Vernon guilty, beyond a reasonable doubt, of two counts of assault with intent to commit murder with resulting bodily injury and four counts of assault with intent to commit murder.' The majority believes that the purely circumstantial evidence against Vernon is substantial. I find it to be attenuated.
 
 
 16
 The evidence is insufficient to support the verdict because it only proves that Vernon ran into the house, shots were fired, and he ran out again. According to the Government, that circumstantial evidence proves beyond a reasonable doubt that Vernon ran into the house, racked and shot the shotgun, intended to commit murder, and then fled by breaking a window in the rear of the house. I disagree for two reasons. First, it is equally plausible that Vernon ran into the house only to escape thr horrifying arrests that were occurring outside and then, sought egress through the rear to avoid being shot. Second, although it is thoroughly established that circumstantial evidence need not remove every reasonable hypothesis except guilt, United States v. Stone, 748 F.2d 361, 363 (6th Cir. 1984), 'where the jury is called upon the choose between 'reasonable probabilities' of equal weight, one innocent and the other criminal, a conviction [based wholly on circumstantial evidence] cannot stand.' United States v. Campion, 560 F.2d 751, 754 (6th Cir. 1977); see also United States v. Combs, 672 F.2d 574, 576-77 (6th Cir.), cert. denied, 458 U.S. 1111 (1982).
 
 
 17
 The insufficiency of evidence exists because the officers did not perform their basic law enforcement functions of collecting, identifying, and preserving evidence. For example, the officers failed to get forensic reports concerning visible or latent skin prints, which could have been found on any porous, absorbent surface that Vernon touched during the assaults such as the spent cartridge casings, the shotgun trigger, barrel, or stock, the glass windows in the front and rear of the house, or the wooden window frames. See generally, J. Vandiver, Criminal Investigation, A Guide to Techniques and Solutions, 69 (1983) (the value of partial and total skin prints). The officers also failed to gather and preserve glass fragments that would have been found on Vernon's clothing or shoes, if he had broken the glass windows while firing the shotgun or while fleeing in house. The officers further failed to use the Trace Metal Detection Technique to determine whether Vernon had recently held a metallic object with the pattern shape of the shotgun's barrel or grip. See J. Dowling, Criminal Investigation 107 (1976). Finally, the police officers failed to retrieve footprints or heelprints that could have been found on the ground immediately outside of the rear window or on the window itself, if Vernon kicked the window. See generally, Vandiver, 92-96, 324-25.
 
 
 18
 That evidence is important because finger or palm prints would have been direct evidence of and the glass fragments, footprints or heelprints, and the Trace Metal Detection Techique would have been circumstantial evidence of Vernon's guilt. Absent such readily available evidence, I cannot conclude that a rational trier of fact, viewing the available circumstantial evidence in a light most favorable to the Government, could have found beyond a reasonable doubt the essential elements of the crimes with which Vernon was charged. See Jackson v. Virginia, 443 U.S. 307, 319 (1979). I, therefore, respectfully dissent.
 
 
 
 *
 Honorable John D. Holschuh, United States District Judge for the Southern District of Ohio, sitting by designation