**UNITED STATES of America**

v.

**Anthony G. OLBRES and Shirley A. Olbres.**

**Cr. No. 93–27–1–2–M.**

United States District Court,
D. New Hampshire.

Sept. 30, 1994.

Steven M. Gordon, Shaheen, Cappiello, Stein & Gordon, Concord, NH, Terry Philip Segal, Boston, MA, for Anthony G. Olbres and Shirley A. Olbres.

Gretchen Leah Witt, U.S. Attorney's Office, Concord, NH, James W. Chapman, Jr., U.S. Dept. of Justice, Tax Div., Northern Crim. Enforcement Section, Washington, DC, Brian T. Tucker, Rath, Young, Pignatelli & Oyer, P.A., Concord, NH, for U.S.

## MEMORANDUM ORDER

McAULIFFE, District Judge.

This close and difficult case raises fundamental issues about the nature of the court's role in insuring that criminal convictions are obtained only upon proof beyond a reasonable doubt of each essential element of the crime charged.

Defendants Anthony and Shirley Olbres were indicted on three counts of willful income tax evasion related to tax years 1986, 1987, and 1988. 26 U.S.C. § 7201. After seven days of trial and three days of deliberation, the jury declared itself deadlocked. Over defense objections, the court delivered a modified *Allen* charge,[1] urging the jury to continue its deliberations in an effort to reach a verdict. The jury then retired for the weekend and returned a verdict on each count the following Monday, the fourth day of deliberations. The jury acquitted defendants on Counts I and III of the indictment, relating to tax years 1986 and 1988, but convicted both defendants on Count II, relating to tax year 1987.

At the close of all the evidence, and before the case was submitted to the jury, defendants moved for judgment of acquittal on all three counts on grounds that the evidence was insufficient as a matter of law to establish their guilt beyond a reasonable doubt. *See* Fed.R.Crim.P. 29(a). The court re-

---

1. The modified *Allen* charge was drawn from that approved in *United States v. Nichols,* 820 F.2d 508, 511 (1st Cir.1987). *See also Allen v.* *United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

served its decision on the motion until after the verdict. *See* Fed.R.Crim.P. 29(b). On March 22, 1994, the court heard oral argument on the motion and granted the parties leave to file supplemental memoranda.

The difficulty presented by this case stems in part from the inexact nature of judicial review of insufficiency of evidence claims, and in part from the fact that such review unavoidably includes a subjective component. In considering an insufficiency claim, a court is called upon to decide whether the evidence is adequate, as a matter of law, to meet a subjective standard of persuasion. That assessment is itself partially subjective, and, because it is partially subjective, it will, in close cases, yield conclusions about which reasonable judicial minds might differ.

In this case, the only disputed element of the crime of conviction was "willfulness." As demonstrated in the government's post-trial memoranda, its case for willfulness was neither frivolous nor wholly unpersuasive. Thus, the critical Rule 29 inquiry here is not whether evidence was presented from which willfulness could be inferred; it could. Instead, the critical inquiry here is whether a reasonable jury could infer willfulness from the evidence presented *to the requisite degree of certitude* necessary to support a conviction. Subsumed in that inquiry is a basic issue related to the means properly used by a trial judge to measure circumstantial or inferential evidence to determine whether it is of sufficient persuasive force to prove a necessary fact "beyond a reasonable doubt." Those questions provide the focus of discussion.

At the outset, however, it must be noted that, as difficult as it might be to draw and enforce inexact distinctions among varying degrees of certitude, a defendant's constitutional due process right not to be convicted except upon proof legally sufficient to establish each element of the crime charged "beyond a reasonable doubt" compels judges to do exactly that. In this case, albeit a close one, the government's proof must be deemed to fall short, as a matter of law, of the

persuasive value required to permit a reasonable jury to find the element of willfulness beyond a reasonable doubt.

## *Discussion*

### I. Count II: Tax Evasion

■ To prove the crime described in Count II, violation of 26 U.S.C. § 7201,[2] the government was required to prove the following essential elements beyond a reasonable doubt: (1) the existence of a substantial tax deficiency; (2) an affirmative act constituting an evasion or attempted evasion of the tax; and (3) willfulness. *See Sansone v. United States*, 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965); *Spies v. United States*, 317 U.S. 492, 499–500, 63 S.Ct. 364, 368–69, 87 L.Ed. 418 (1943); *United States v. Waldeck*, 909 F.2d 555, 557 (1st Cir.1990). Defendants conceded that they failed to pay a substantial amount of income tax in each of the three years specified in Counts I, II and III of the indictment. They also conceded that because each tax return understated their income, those returns were necessarily false. The government and defendants agreed that the only disputed issues between them were whether defendants knew the returns were false when filed and whether they, therefore, acted "willfully." Of course, the issue here is limited to the conviction on Count II (tax year 1987); the verdicts of acquittal on Counts I and III are not relevant to this ruling. *United States v. Powell*, 469 U.S. 57, 64–65, 105 S.Ct. 471, 476–77, 83 L.Ed.2d 461 (1984).

■ "Willfulness" is the "voluntary, intentional violation of a known legal duty." *United States v. Drape*, 668 F.2d 22, 26 (1st Cir.1982) (citing *United States v. Pomponio*, 429 U.S. 10, 11–12, 97 S.Ct. 22, 23–24, 50 L.Ed.2d 12 (1976)); *see also, Cheek v. United States*, 498 U.S. 192, 195, 111 S.Ct. 604, 607, 112 L.Ed.2d 617 (1991); *United States v. Aitken*, 755 F.2d 188, 191 (1st Cir.1985). Evidence of willfulness is often circumstantial, since direct proof of the required specific intent is ordinarily unavailable.

---

**2.** 26 U.S.C. § 7201 provides in pertinent part: Any person who willfully attempts in any manner to evade or defeat any tax imposed by [the Internal Revenue Code] or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony....

The evidence presented at trial in this case, cast in the light most favorable to the prosecution, showed the following. Defendants Anthony and Shirley Olbres are husband and wife. In 1974 they began a small business designing, fabricating, and selling trade show booths. The business, originally a small sole proprietorship, rapidly grew into a successful enterprise with gross receipts in the millions of dollars and clients among the country's major corporations. The business experienced major relative growth between 1986 and 1988.

Anthony Olbres, an industrial designer by education and profession, was responsible for the business's major design and fabrication work, most of the marketing, and its billing function. Shirley Olbres assisted in the business from its inception, but always on a part-time basis. She assumed responsibility for maintaining the financial records, while also caring for the couple's three children. Mrs. Olbres completed three years of college before her marriage, but she had neither training nor prior experience in accounting or bookkeeping. As the business grew, defendants hired employees to assist in the fabrication, administration, and marketing aspects of the enterprise. But, despite her lack of training, Shirley Olbres continued to be responsible for the company's financial records. Those records were generally sloppy and contained many errors.

Beginning in 1976, ten years before the tax year at issue, defendants retained a local certified public accountant, Wilson Dennett, to provide general business accounting and tax preparation services. Although not without some professional deficiencies, Dennett was a competent accountant, an honest person, and was not in collusion with defendants in any way. Dennett prepared financial statements, assisted with financing transactions, provided routine accounting advice, and prepared defendants' tax returns, including the 1987 return described in Count II of the indictment. He routinely relied on information provided by Mr. and Mrs. Olbres in performing these services. He did not perform in-house bookkeeping or other record keeping functions for the business.

Defendants' 1987 joint tax return was audited by the Internal Revenue Service in 1989.[3] Agent Leonard Kaply was eventually assigned the task of conducting the audit. After routine investigation, he determined that substantial business receipts had been deposited in defendants' business accounts in 1987, but had not been properly accounted for on that year's tax return. Upon request, Mr. Dennett provided Agent Kaply with access to defendants' files and his own work papers. Meetings between the IRS and defendants were scheduled, but they proved unproductive. Bank records relating to some of defendants' accounts were not produced as requested by Agent Kaply. At some point defendants, through legal counsel, expressed a willingness to cooperate fully with the civil audit, but only on condition that IRS agree not to refer the matter to its criminal division. Agent Kaply and his superiors declined, and decided that defendants, and presumably their accountant and legal counsel, were not fully cooperating in the civil audit. The case was then referred to the criminal investigation division. Agent Kaply also testified that Dennett once stated that Anthony Olbres had acknowledged (to Dennett) a "problem" with unreported income relative to defendants' 1987 return. Mr. Dennett's statement to Kaply and Mr. Olbres's statement to Dennett were both made after the audit had begun.

Defendants' 1986, 1987, and 1988 tax returns in fact underreported their income, with the most substantial understatement occurring on the 1987 tax return. Defendants reported gross business receipts of $1,235,069, and rental income of $30,000 for 1987. The correct amounts were shown to be $1,962,170 and $51,890 respectively, resulting in a total gross income understatement of $748,991, or roughly 37%. (While much confusing testimony and argument was present-

---

**3.** The casual curiosity of an IRS employee apparently triggered the initial audit. While driving through Exeter, New Hampshire, the employee noticed a Rolls Royce automobile parked at the Exeter Inn. Because he thought it conspicuous that a luxury automobile should be parked in Exeter, he took down the license plate number with the intention of later identifying the owner and examining his or her tax returns. The car belonged to defendants.

ed involving other comparisons—i.e. taxable income, net profit, taxes paid, etc.,—the actual issue relates to understatement of gross income; all other material tax consequences flowed from that circumstance and not from misfeasance in calculation or misapplication of correct accounting principles.)

No evidence was produced tending to show that defendants were engaged in any illicit business activities—their business was entirely legitimate and did not involve cash receipts or payments. Defendants maintained several bank accounts in four different local banks. All of the accounts were in defendants' own names, the name of their business, or the names of their rental properties. The government produced no evidence of hidden accounts, straws, offshore accounts or accounts held under pseudonyms. Defendants did maintain books and records. No double set of books was employed. No alterations of existing records were shown. No false invoices or documents were produced, but incorrect entries by Mrs. Olbres were shown (e.g. erroneously recording a customer receipt as loan proceeds). No evidence tending to show that defendants handled their business affairs in a manner designed to frustrate record keeping was produced.

Two bank accounts maintained at the Indian·Head Bank—referred to at trial as the "business checking account" and the "business savings account"[4] respectively—contained deposits from defendants' business. All monies received by the business were documented or documentable (payment by check, memorialized by Forms 1099, recorded in ledgers or as deposits on bank records, etc.).

During 1987, Mrs. Olbres maintained an invoice log which recorded all business invoices sent out and payments received. She also kept a cash receipts journal in which she recorded all business receipts deposited into their business *checking* account, but she did not keep a journal showing deposits made to their business *savings* account. The total receipts recorded in the cash receipts journal corresponded to within fifteen dollars of the deposits shown on the checking account's statements and within five thousand dollars of the amount reported as "gross receipts" by defendants on their 1987 return.

The civil audit revealed that undeclared 1987 deposits exceeding $718,000 were made to the business *savings* account and other accounts, comprised essentially of three types: A major invoice payment by Digital Equipment Corporation ($445,176.28); rebates from transportation companies who contracted to move defendants' trade show booths from place to place; and rental property income. Defendants produced the 1987 cash receipts journal for inspection during the civil audit, but claimed they could not find the invoice log for that year, or the passbook from the business savings account. .Those documents were not found among their accountant's papers and were not produced at trial. Presumably, the invoice log would have shown that an invoice in the amount of $445,176.28 was sent to Digital Equipment Corporation and that Digital paid it. The bank's records confirmed that the Digital payment was deposited in the business savings account. The other substantial amounts at issue, shipping rebates or discounts from transportation companies, were also deposited in defendants' bank accounts, but were not "invoiced." The rental receipts were paid in accordance with lease terms and they too were deposited in defendants' accounts.

Both defendants testified in their own defense. They asserted that they did not intend to file false returns and, at the time of filing, were not aware that the returns substantially understated their income. They said they necessarily relied on Mr. Dennett, their accountant and tax preparer, to ensure· that the returns were properly completed and correct. Defendants stated that they did not discuss their prepared tax returns with Mr. Dennett in detail and did not review, scrutinize or even read the returns before signing them; they simply turned over their

---

4. The government stipulated at trial that *in fact* the savings account was used as and was properly called the "business savings account." The business savings account was apparently used to hold funds that were not immediately necessary to meet cash flow needs, at greater interest than was available from the business checking account.

accumulated papers and records for Dennett to use, answered whatever questions he had, and signed the returns when he completed his work.

The evidence showed that while Mr. Dennett included the interest paid on the business savings account (and interest on defendants' other accounts) on their 1987 return, he failed to include as income a substantial portion of the amounts deposited in the account which actually generated that interest. The evidence also showed that the interest earned in 1987 on the business savings account was dramatically higher than it had been the year before—due of course to the substantially higher balance occasioned by the Digital and other deposits.

Mr. Dennett's accounting work papers included a financial statement he had prepared, in consultation with Mr. Olbres, which projected defendants' income for 1987. That projection had been prepared in connection with an earlier prospective sale of defendants' business. The statement showed projected 1987 income in the amount of $1,976,000, an amount nearly identical to defendants' actually realized gross income for 1987. That income projection had been filed by Dennett with the IRS as part of defendants' 1986 return the year before, albeit unnecessarily (and inexplicably, assuming CPA Dennett was aware of the superfluity of filing it as part of the 1986 return).

The evidence also established that in 1988 defendants applied, through Mr. Dennett, for a comparatively modest refund of back taxes, including taxes paid for 1987.

The government showed that defendants were rich, not particularly generous, and tended to buy luxury items—e.g. expensive cars, yachts, private schooling for their children. The government also demonstrated that a close accounting analysis showed that defendants spent more money in 1987 than they would have had readily available according to their tax return. The inference to be drawn from that circumstance was that by the end of 1987, or certainly by the time their 1987 tax return was filed, defendants knew that the tax return was wrong, because they knew that they had spent more money than should have been available, according to the return's own figures. The government contended that the discrepancy between the 1987 calendar year's expenditures and the amounts listed on the 1987 tax return was as clear to defendants when they filed the return as it was to the government's summary accountant witness after she completed her analysis.

## II. Motion for Judgment of Acquittal

■ Consideration of defendants' motion begins with familiar and easily stated principles. If the evidence adduced during trial is insufficient to sustain a conviction of the offense charged, the court must enter a judgment of acquittal. Fed.R.Crim.P. 29(a). Evidence is insufficient to sustain a conviction if it cannot, as a matter of law, support a finding of guilt beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

In the context of a criminal jury trial, the phrase "beyond a reasonable doubt" describes the subjective state of certainty against which a jury is commanded to evaluate its conclusions regarding the evidence. The prosecution bears the burden of persuading the jury that the evidence demonstrates guilt to the satisfaction of that subjective standard, i.e. "beyond a reasonable doubt." The role played by the reasonable doubt standard in a jury's deliberative weighing of the evidence has been characterized as follows:

> [I]n a judicial proceeding in which there is a dispute about the facts of some earlier event, the factfinder cannot acquire unassailably accurate knowledge of what happened. Instead all the factfinder can acquire is a belief of what *probably* happened. The intensity of the belief—the degree to which a factfinder is convinced that a given act actually occurred—can, of course, vary. In this regard, a standard of proof represents an attempt to instruct the factfinder concerning the correctness of factual conclusions for a particular type of adjudication. Although the phrases "preponderance of the evidence" and "proof beyond a reasonable doubt" are quantita-

tively imprecise, they do communicate to the finder of fact different notions concerning the degree of confidence he is expected to have in the correctness of his factual conclusions.

*In re Winship*, 397 U.S. at 370, 90 S.Ct. at 1076 (Harlan, J., concurring) (emphasis in original).

■ While serving as an important practical safeguard against speculative determinations by a criminal jury, the quantitatively imprecise reasonable doubt standard also serves another important purpose. It describes the constitutional measure against which a reviewing court must assess the *legal* sufficiency of the evidence to sustain a jury's conclusion of guilt. Judicial assessment of legal sufficiency must be made without regard to what a particular jury may have actually decided in a particular case. *See e.g. Jackson v. Virginia*, 443 U.S. at 317 n. 10, 99 S.Ct. at 2788 n. 10. A judge considering a motion for judgment of acquittal must independently determine whether, upon the evidence presented, a rational jury could reach the *subjective* conclusion of guilt beyond a reasonable doubt.

■ In deciding a Rule 29 motion, it is of course critical that a judge remain cognizant of the important difference between a motion for judgment of acquittal and a motion for new trial under Rule 33. A Rule 29 motion challenges the legal sufficiency of the evidence, while a Rule 33 motion asks the court to determine whether, as the court perceives it, the weight of the evidence preponderates against the verdict, such that "the interest of justice" requires a new trial. *See United States v. Thornley*, 707 F.2d 622, 626 (1st Cir.1983); Fed.R.Crim.P. 33. The Supreme Court has described the distinction as follows:

[A] conviction rests upon insufficient evidence when, even after viewing the evi-

dence in the light most favorable to the prosecution, no rational factfinder could have found the defendant guilty beyond a reasonable doubt. A reversal based on the weight of the evidence, on the other hand, draws the ... court into questions of credibility.

\*    \*    \*    \*    \*    \*

A reversal on this ground, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Instead, the ... court sits as a "thirteenth juror" and disagrees with the jury's resolution of conflicting testimony.

*Tibbs v. Florida*, 457 U.S. 31, 37, 42, 102 S.Ct. 2211, 2215–16, 2218, 72 L.Ed.2d 652 (1982); *see also United States v. Morales*, 902 F.2d 604, 608 (7th Cir.1990) (granting motion for new trial but denying motion for judgment of acquittal), *amended*, 910 F.2d 467 (7th Cir.1990).

■ In this case defendants did not file a Rule 33 motion, and the court is powerless to consider or grant such a motion *sua sponte*. Fed.R.Crim.P. 33 (motion for new trial based on grounds other than newly discovered evidence must be filed within seven days after verdict); *United States v. Lema*, 909 F.2d 561, 565 (1st Cir.1990) (Rule 33 motion must be filed within seven days of verdict, which time limit is jurisdictional).

■ The accepted test against which a court must judge legal sufficiency under Rule 29 is also familiar and easily stated. If the evidence presented, viewed in a light most favorable to the prosecution, drawing all reasonable inferences and resolving all credibility issues in its favor, would permit a rational jury to find each essential element of the crime charged beyond a reasonable doubt, then it is legally sufficient.[5] *Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. at 2789. *See In re Winship*, 397 U.S. at 364, 90 S.Ct. at

---

**5.** In this circuit, references to "a rational jury" or "a reasonable jury" appear to be used interchangeably with "any rational trier of fact" or "any rational juror." *See, e.g., United States v. Loder*, 23 F.3d 586 (1st Cir.1994); *United States v. Torres–Maldonado*, 14 F.3d 95, 100 (1st Cir. 1994); *United States v. Monteiro*, 871 F.2d 204, 211 (1st Cir.1989), *cert. denied*, 493 U.S. 833, 110 S.Ct. 108, 107 L.Ed.2d 71 (1989). Whether these

formulations are in fact equivalents appears to be the subject of some discussion. *See Jackson v. Virginia*, 443 U.S. at 334, 99 S.Ct. at 2797 (Stevens, J., concurring); Hon. Jon O. Newman, *Beyond "Reasonable Doubt"*, 68 N.Y.U.L.Rev. 979, 986–88, 993 (1993) (suggesting the possibility of important implicit differences, but acknowledging that any claimed distinction "might be largely semantic").

1072–73; *United States v. Gifford,* 17 F.3d 462, 467 (1st Cir.1994); *United States v. Sepulveda,* 15 F.3d 1161, 1173 (1st Cir.1993); *United States v. Mena–Robles,* 4 F.3d 1026, 1031 (1st Cir.1993); *United States v. Ortiz,* 966 F.2d 707, 711 (1st Cir.1992). In addition, "[s]o long as the evidence, taken as a whole, supports the judgment of conviction, it need not rule out other hypotheses more congenial to a finding of innocence." *Gifford, supra,* at 467, *citing United States v. Victoria–Peguero,* 920 F.2d 77, 86–87 (1st Cir.1990), *cert. denied,* 500 U.S. 932, 111 S.Ct. 2053, 114 L.Ed.2d 458 (1991).

■ Legal sufficiency does not turn on whether the presiding judge personally believes that the evidence establishes guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. at 318–19, 99 S.Ct. at 2788–89. Indeed, in the context of Rule 29, a judge must scrupulously avoid weighing the evidence as a "thirteenth juror," and must resolve all evidentiary conflicts and inferences, particularly questions of credibility, in favor of the government. *Id.,* at 319, 99 S.Ct. at 2789; *United States v. Rothrock,* 806 F.2d 318, 320 (1st Cir.1986).

■ However, a court may not abdicate its obligations under Rule 29 by deeming the evidence to be legally sufficient simply because a properly instructed jury returns a guilty verdict. *Jackson v. Virginia,* 443 U.S. at 318, 99 S.Ct. at 2788. Similarly, the existence of "some evidence" from which every element of the charged offense could

be found does not mean that the evidence, as a whole, is necessarily legally sufficient to permit a finding of guilt beyond a reasonable doubt.[6] *Id.* at 316, 99 S.Ct. at 2787. The evidence presented by the government must, as a whole, be of a quality and quantity sufficient to establish guilt beyond a reasonable doubt. *Id.; United States v. Loder,* 23 F.3d 586, 590 (1st Cir.1994); *United States v. Doe,* 921 F.2d 340, 343–344 (1st Cir.1990); *United States v. Smith,* 680 F.2d 255, 259 (1st Cir.1982), *cert. denied,* 459 U.S. 1110, 103 S.Ct. 738, 74 L.Ed.2d 960 (1983).[7]

■ While the evidence need not exclude every reasonable hypothesis of innocence to support a conviction,[8] still, in measuring the persuasive value of all the evidence against the constitutional requirement of proof beyond a reasonable doubt, "it is equally true that if a hypothesis of innocence is sufficiently reasonable and sufficiently strong, then a reasonable trier of fact *must* necessarily entertain a reasonable doubt about guilt." *United States v. Bell,* 678 F.2d 547, 550 (5th Cir.1982) *(en banc)* (emphasis in original), *aff'd,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983); *see also United States v. Michelena–Orovio,* 719 F.2d 738, 759 (5th Cir.1983) (Wisdom, J., dissenting); *United States v. Campion,* 560 F.2d 751, 753–754 (6th Cir.1977), *cert. denied,* 465 U.S. 1104, 104 S.Ct. 1605, 80 L.Ed.2d 135 (1984).

■ If a judge, restricting his or her review to the proper factors, determines that

---

**6.** Some precedent suggests that a guilty verdict must be supported by "substantial evidence" *see Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *Pierce v. United States,* 252 U.S. 239, 251–52, 40 S.Ct. 205, 210, 64 L.Ed. 542 (1920), or that "it is enough that the finding of guilt draws its essence from a plausible reading of the record." *United States v. Gifford,* 17 F.3d 462, 467 (1st Cir.1994) *citing United States v. Sepulveda,* 15 F.3d 1161, 1173 (1st Cir.1993). At least three circuits appear to rely on some articulation of a "substantial evidence" standard in judging legal sufficiency. *See, e.g., United States v. MacCloskey,* 682 F.2d 468, 473 (4th Cir.1982); *United States v. DeClue,* 899 F.2d 1465, 1471 (6th Cir.1990); *United States v. Winner,* 666 F.2d 447, 451 (10th Cir. 1981). There does not appear to be any First Circuit decision precisely on point, *but cf. United States v. Francomano,* 554 F.2d 483, 486 (1st Cir.1977) (granting judgment of acquittal where

"no substantial evidence" supported conviction), nevertheless, it would seem that plausibility or substantiality is enough only if the evidence permits a reasonable juror to adhere to the plausible interpretation beyond a reasonable doubt.

**7.** In many cases, proper assessment of the totality of the evidence on the one hand, and impermissible weighing of the evidence on the other, may prove difficult to distinguish, *see, e.g., United States v. Mariani,* 725 F.2d 862, 866 (2d Cir. 1984) (finding error in the district court's consideration of the "strong possibility" that the evidence was consistent with innocence), but, a court cannot abandon the effort merely because it is difficult.

**8.** *See Jackson v. Virginia,* 443 U.S. at 326, 99 S.Ct. at 2793; *United States v. Smith,* 680 F.2d 255, 259 (1st Cir.1982); *United States v. Gifford, supra.*

reasonable jurors must necessarily have a reasonable doubt as to guilt, a judgment of acquittal is constitutionally required. However, if a judge concludes that "a reasonable mind might fairly have a reasonable doubt or might fairly not have one, the case is for the jury, and the decision is for the jurors to make." *United States v. Kirvan*, 997 F.2d 963 (1st Cir.1993), quoting *Curley v. United States*, 160 F.2d at 232.

Though the Rule 29 sufficiency standard is uniformly agreed upon, that consensus belies the complexity of its real world application. A judicial determination that evidence is "legally sufficient" implies an essentially objective conclusion based on principled application of law to fact, and further suggests that the same conclusion will ordinarily be reached by any judicial officer who properly applies established law to those same facts. However, where, as here, a prosecution is based on circumstantial evidence offered to prove specific intent by inference, and the case does not turn on the credibility of witnesses,[9] and the persuasive value of the evidence as a whole is not obviously adequate to meet the high standard of certitude required, reasonable jurists might well reach different, inherently subjective, conclusions. In that context, a Rule 29 motion raises the following question. By what precise means should a trial judge "objectively" determine whether the evidence, as a whole, is sufficient to persuade a reasonable jury of the defendant's guilt beyond a reasonable doubt—as distinguished from being merely sufficient to persuade by a preponderance, or perhaps only clearly and convincingly—without resorting to his or her own, in part, inescapably subjective view of what evidence a reasonable jury could or could not find persuasive beyond a reasonable doubt? Is the realm between preponderance and "beyond reasonable doubt" objectively identifiable?

As Chief Judge Jon O. Newman [10] writes, the easy cases turn on total failures of proof with regard to an essential element of the crime charged. J. Newman, *Beyond "Reasonable Doubt"*, 68 N.Y.U.L.Rev. 979, 989 (1993), *citing* e.g., *United States v. Lopez–Alvarez*, 970 F.2d 583, 593–94 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 504, 121 L.Ed.2d 440 (1992); *United States v. Casper*, 956 F.2d 416, 421–22 (3rd Cir.1992); *United States v. Long*, 905 F.2d 1572, 1576–79 (D.C.Cir.1990), *cert. denied*, 498 U.S. 948, 111 S.Ct. 365, 112 L.Ed.2d 328 (1990); *United States v. Bruun*, 809 F.2d 397, 404–05, 410–11 (7th Cir.1987). The more complicated cases, like this one, require some form of judicial measuring of the evidence against varying degrees of subjective certitude that the evidence might evoke in a reasonable jury.

Courts have struggled with and debated a judge's proper role and the proper standard to be applied in that measuring process for decades. The eminent Learned Hand and the Court of Appeals for the Second Circuit once took the pragmatic view that so long as the prosecution presents evidence on every element sufficient to satisfy the lower civil "preponderance" standard, the evidence must necessarily be considered legally sufficient to support a finding of guilt beyond a reasonable doubt as well:

> We agree with Judge Amidon in *Hays v. United States*, supra, 231 F. 106 [ (8th Cir.1916) ], who refused to distinguish between the evidence which should satisfy reasonable men, and the evidence which should satisfy reasonable men beyond a

**9.** As to Count II (1987) the jury may be presumed to have discredited defendants' own testimony, which is a matter solely within the jury's province. The jury's "disbelief of a defendant's testimony may supplement already existing evidence and help make the evidence in a borderline case sufficient," but here that disbelief alone is insufficient to elevate the persuasive value of the evidence to the subjective degree of near certitude required to convict. *See United States v. Tyler*, 758 F.2d 66 (2d Cir.1985):

> The extent to which a jury may translate its discrediting of a witness testimony into posi-

tive proof is limited. As the Supreme Court recently stated: "When the testimony of a witness is not believed, the trier of fact may simply disregard it. Normally the discredited testimony is not considered a sufficient basis for drawing a contrary conclusion."

*United States v. Tyler*, 758 F.2d at 70 n. 3, *quoting, Bose Corp. v. Consumers Union*, 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).

**10.** Chief Judge, United States Court of Appeals for the Second Circuit.

reasonable doubt. While at times it may be practicable to deal with these as separate without unreal refinements, in the long run the line between them is too thin for day to day use.

*United States v. Feinberg,* 140 F.2d 592, 594 (2d Cir.1944) (Hand, J.)

But Judge Hand's approach was not generally accepted and has since been rejected by the Second Circuit and the Supreme Court. In *United States v. Taylor,* 464 F.2d 240, 243 (2d Cir.1972), the Second Circuit overruled *Feinberg,* holding that, "[i]mplicit in the [Supreme] Court's recognition of varying burdens of proof is a concomitant duty on the judge to consider the applicable burden when deciding whether to send a case to the jury." The court went on to adopt Judge Prettyman's alternative view, expressed twenty-five years earlier in *Curley v. United States,* 160 F.2d 229 (D.C.Cir.1947), *cert. denied,* 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947):

> The true rule, therefore, is that a trial judge, in passing upon a motion for directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion; or, to state it another way, if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion must be granted. If he concludes that either of two results, a reasonable doubt or no reasonable doubt is fairly possible, he must let the jury decide the matter. (footnotes omitted)

*United States v. Taylor,* 464 F.2d at 243, quoting *Curley v. United States,* 160 F.2d at 232–233.

In 1979 the United States Supreme Court endorsed Judge Prettyman's approach as well. *See Jackson v. Virginia,* 443 U.S. at 318 n. 11, 99 S.Ct. at 2789 n. 11. It is now settled law that what Judge Hand regarded as the "too thin line for day to day use" between "preponderance" and "beyond a reasonable doubt" must nevertheless be identified and enforced by the courts.

What little guidance exists as to how that line might be recognized is general in nature and seems to be found primarily in the Supreme Court's declared satisfaction with "the demonstrated ability of judges to distinguish legally sufficient evidence from evidence that rationally supports a verdict." *Tibbs v. Florida,* 457 U.S. 31, 44–45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652 (1982). *See also In re Winship,* 397 U.S. at 369, 90 S.Ct. at 1075 ("Notwithstanding Professor Wigmore's skepticism [about the ability to meaningfully measure degrees of certitude], we have before us a case where the choice of the standard of proof has made a difference....") (Harlan, J., concurring).[11] Similar guidance was provided by Judge Prettyman in *Curley v. United States, supra:* "[t]he task of the judge in [determining the legal sufficiency of the evidence] is not easy, ... but we know of no way to avoid that difficulty." 160 F.2d at 233.

■ Keeping in mind that the reasonable doubt standard "provides protection to the innocent only to the extent that the standard, in reality, is an enforceable rule of law," *Victor v. Nebraska,* —— U.S. ——, ——, 114 S.Ct. 1239, 1254, 127 L.Ed.2d 583, 604–05 (1994) (Blackmun, J., dissenting), a trial judge considering a Rule 29 motion is duty bound to enforce that constitutional standard. Otherwise, an essential check on improper conviction in marginally persuasive cases would be lost, and the constitutional promise of criminal conviction only upon proof of guilt beyond a reasonable doubt would amount to little more than an expedient and hollow aphorism.

Although he was writing about appellate review, Chief Judge Jon O. Newman's recent criticism, that in criminal cases judges do not always carefully respect different standards

---

**11.** Justice Harlan referred to the fact that a New York Family Court Judge, sitting as trier of fact, "forthrightly acknowledged that he believed by a preponderance of the evidence, but was not convinced beyond a reasonable doubt," that a juvenile was delinquent. *In Re Winship,* 397 U.S. at 369, 90 S.Ct. at 1075.

of proof, is of particular relevance to trial judges considering Rule 29 motions:

> courts ... examine a record to satisfy themselves only that there is some evidence of guilt and do not conscientiously assess whether the evidence suffices to permit a finding by the high degree of persuasion required by the 'reasonable doubt' standard. The irony is that ever since winning the battle to discard [the] 'civil sufficiency' [i.e. Hand] approach, we have been losing the war to achieve meaningful appellate review of insufficiency claims in criminal cases.

J. Newman, *Beyond "Reasonable Doubt"*, 68 N.Y.U.L.Rev. at 989–90.

### III. Sufficiency of the Evidence

■ Whether this is a case in which reasonable jurors fairly might or fairly might not have a reasonable doubt, or one in which reasonable jurors must have a reasonable doubt, is in my view a close question. Nevertheless, considering the evidence as a whole and in the light most favorable to the government under the appropriate Rule 29 standard, any reasonable jury must have a reasonable doubt about whether these defendants knowingly and voluntarily violated a known duty to file an accurate income tax return in 1987.. While the evidence is of sufficient persuasive value to prove willfulness by the civil preponderance standard, it is not sufficient, as a matter of law, to persuade a reasonable jury beyond a reasonable doubt that the defendants acted willfully. A reasonable jury viewing this evidence might find that these defendants "could have" or even "probably" acted knowingly and intentionally, still, that reasonable jury must necessarily have substantial and reasonable doubts about defendants' specific intent, doubts engendered by the cumulative effect of the uncontroverted facts and defendants' strong and reasonable hypothesis of innocence. Consider, for example, the following.

1. Defendants' business was entirely legitimate.

2. No cash transactions were involved and no cash hoards were involved.

3. The unreported income consisted of legitimate business payments, made in the form of checks, by other legitimate businesses. Those checks were made payable to defendants in their own names or the names of their business and were deposited in bank accounts held by them in their names or the names of their businesses.

4. The interest earned on those substantial payments/deposits was properly reported (which reporting is decidedly inconsistent with a conscious intent to hide the principal amount, but is consistent with both sloppy bookkeeping on defendants' part and inadequate professional attention by defendants' accountant).

5. Defendants employed the same independent and honest certified public accountant to prepare their returns during the years in question, and for a decade previously.

6. No evidence of collusion between defendants and their accountant was produced (to the contrary, the prosecution insisted that the accountant acted competently and independently). Because he acted honestly and independently his undisputed errors must be accepted as just that, errors. The accountant's workpapers reveal nothing indicating that he asked for or received answers to obvious professional questions likely to have resulted in either the reporting of the disputed amounts or the making of affirmative misrepresentations by defendants relative to their savings deposits, rental receipts, or shipping "rebates." Yet, those workpapers do include references sufficient to indicate disclosure by defendants and professional familiarity with, or at least a basis for inquiry into, such matters.

7. Defendants' behavior was inconsistent with what would be reasonably expected of persons who have knowingly hidden over $700,000 of income and filed a false tax return for 1987. For example, in 1988 they filed a claim for a relatively small tax refund, through their accountant, part of which was claimed for that very year. While one

could rationally infer from that evidence that defendants were particularly inept tax defrauders, reason compels a substantial doubt about that perhaps plausible interpretation and its implication of criminal intent. Reason more strongly directs the inference and conclusion that defendants did not act knowingly in filing a false 1987 return because intentional tax evaders would not normally invite regulatory attention to fraudulent tax returns by seeking small refunds for the very year in which large fraud occurred. Thus, while the inculpatory inference could arise, it would be a weak one, given the soundness and reasonableness of the alternative.

8. Defendants employed their accountant to provide a broad range of legitimate services and generally confided in him relative to their financial situation. In particular, Mr. Olbres provided information from which the accountant prepared a projected business income statement for 1987 showing $1.9 million, nearly the exact amount realized. That statement was actually filed with the IRS by the accountant (albeit inexplicably) as part of defendants' earlier 1986 tax return.

9. Defendants maintained books and records from which their correct income could easily be determined, although their bookkeeping and financial management efforts were hardly models of competence.

10. No double set of books was kept; no false entries or alterations of existing records occurred; no cash transactions, fictitious payees, hidden or "offshore" accounts, straws, false invoices, or other "badges of fraud" were shown to have been involved.

11. Defendants' unrebutted character evidence was strong, and entirely inconsistent with their having acted with fraudulent intent.

In addition, the following must be considered. Mr. Olbres was not personally involved in providing information to Mr. Dennett, the accountant, relative to tax prepara-

tion; Mrs. Olbres was charged with that responsibility. The accounting and financial management practices of this blossoming enterprise were hardly sophisticated and indeed could fairly be characterized as deplorably negligent. Mrs. Olbres administered the finances of a million dollar business in the same way she administered it when it began, on a part-time basis and in a primitive and disorganized manner.

The income discrepancy in 1987 was comprised of three basic classifications of funds: A substantial payment ($445,176.28) by Digital Equipment Corporation of an invoice, which was deposited in the business savings account; payments to the business by transportation companies (Mayflower and Greyhound) consisting of "rebates," "discounts," or "commissions," representing a percentage of invoices defendants paid for transporting trade show booths around the country; and rental income from commercial property owned by defendants.

As for the Digital payment, the amount was substantially deposited in the business savings account; a Form 1099 memorializing the payment was sent by Digital to defendants and the IRS; the interest generated from that deposit was reported to the IRS; and the paper trail relevant to that income was legitimate, unmarked, and easily followed.

Mr. Olbres collected rents from the rental properties and deposited them in legitimate accounts. Mr. Dennett had the lease agreement related to the Seabrook property among his papers and presumably could (and probably should) have ascertained the correct rental income ($48,000) from that property, rather than simply relying on handwritten notes supplied by Mrs. Olbres (which as it turns out were in error and were among his papers). And, Mr. Dennett was familiar with and had notes among his papers from Mrs. Olbres referencing the "rent" paid relative to the "Barn" property,—the other comparatively small amount at issue. Could a rational inference of "willfulness" be drawn from the discrepancy between the amount reported and the amount actually received from the Seabrook lease, the omission of

rental income from the "Barn" lease, and the summary notes listing $30,000 as rent (apparently derived from a prior lease)? Probably yes. Is that inference of sufficient persuasive value to establish Mrs. Olbres' (or Mr. Olbres') knowing intent to evade taxes, beyond a reasonable doubt? No. A reasonable doubt must exist in the context of this case for the reasons discussed above, absent something more. Perhaps Mr. Dennett's testimony would have exonerated Mr. and Mrs. Olbres, or perhaps it would have erased any obligatory doubt about their specific intent. But Mr. Dennett died prior to trial, and a jury cannot speculate or consider what he might have said about the matter had he lived.

The Mayflower/Greyhound "rebates," qualified as "income" for tax purposes (or, perhaps would more accurately be considered as offsetting the business expense deduction defendants took for the paid transportation invoices, since the rebates reduced those expenses, assuming both expenses and rebates were 1987 transactions). Could a rational jury infer that Mrs. Olbres and/or Mr. Olbres knew those rebates constituted "income" and intentionally failed to report those amounts? Yes. But in context, that inference would not be a strong one, and would be insufficient to establish knowledge and intent beyond a reasonable doubt. The persuasive value of that inference is substantially diluted by Mrs. Olbres' unchallenged accounting incompetence, the technical complexity of the tax consequences of the rebate system they established, and the strong plausibility that an unschooled lay person could easily misconstrue the rebate as something other than "income," especially given both Mayflower and Greyhound's own failure to treat those rebates as income to defendants by sending Forms 1099 to them and IRS. And, of course, the rebates, or commissions, were deposited into accounts actually held by defendants and unquestionably associated with them. The fact of the "commissions'" existence, if not the correct amounts, was also communicated to their accountant as evidenced by his work papers. All of which effectively undermines a conclusion of willfulness beyond a reasonable doubt, as a matter of law, as to failure to include those amounts.

This is not to say the government's case was, on the whole, unpersuasive. If the question were put, "But couldn't a reasonable jury believe upon all the evidence that these defendants, although they were clumsy, careless, negligent and rather dim, nevertheless did blatantly intend to defraud the government of 1987 taxes due?," the answer would be "Yes." A jury certainly could *rationally* reach that conclusion. But not beyond a reasonable doubt. The evidence *could* rationally be interpreted as showing these defendants to be bumbling and blatant tax frauds, deliberately concealing income from their accountant, and entirely incapable of acting in a manner consistent with reasonable efforts to either successfully effect or conceal their crime. However, that interpretation is simply not supported by evidence of a persuasive value sufficient to place its conclusion—an inference of willfulness—beyond reasonable doubt as a matter of law.

Judge Bownes, writing for the Court of Appeals in *United States v. Clotida*, 892 F.2d 1098 (1st Cir.1989), said:

> The essence of any truly civilized criminal justice system is fairness in the individual case. In reversing [the defendant's] conviction, we are reminded that "[i]t is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent [persons] are being condemned."

*Id.*, at 1106, *quoting, In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970.)

The evidence in this case, too, is adequate to support a finding of willfulness only if measured against a diluted standard of proof that would leave people in doubt whether innocent persons are being condemned.

> Our democracy rests in no small part on our faith in the ability of the criminal justice system to separate those who are guilty from those who are not. This is a faith which springs fundamentally from the requirement that unless guilt is established beyond all reasonable doubt, the accused shall go free.

*Victor v. Nebraska,* —— U.S. ——, ——, 114 S.Ct. 1239, 1254, 127 L.Ed.2d 583 (1994) (Blackmun, dissenting).

The unavoidable subjective component of this analysis, placing the persuasive value of the evidence above the preponderance standard but below the beyond a reasonable doubt standard, essentially dictates the result, and because I find the persuasive value of the evidence to be incapable of persuading a reasonable jury of willfulness "beyond a reasonable doubt" as a matter of law, I also find the evidence of record to be insufficient to support defendants' conviction on Count II.

Concededly, under the civil preponderance approach, a different result would obtain. A different result might also obtain if the government were required to prove its case only by clear and convincing evidence. And, also concededly, if the precedent in this circuit is inconsistent with the *en banc* holding of the Court of Appeals for the Fifth Circuit in *United States v. Bell, supra,* a different result might obtain. I am not persuaded that the *Bell* rationale is inconsistent with this circuit's approach to analyzing insufficiency claims.

While juries are "perfectly entitled not to believe what may be inherently incredible," *United States v. Luciano Pacheco,* 794 F.2d 7, 10 (1st Cir.1986), the totality of the evidence here establishes a hypothesis of innocence that is far from incredible. I find that defendants' hypothesis of innocence (negligence, incompetence, inattention, and reasonable reliance on the family's long-time certified public accountant) to be sufficiently reasonable and sufficiently strong and sufficiently credible that a rational trier of fact, considering the evidence as a whole, and even according the government every reasonable inference in its favor, must necessarily entertain a reasonable doubt about defendants' guilt of the offense charged in Count II.

Accordingly, I am obligated to direct entry of judgment of acquittal on that Count.

## IV. Conclusion

Defendants' motion for judgment of acquittal (document no. 87) is granted and the clerk is directed to enter judgment of acquittal on Count II in accordance with this Order, and to enter judgment of acquittal on Counts I and III in accordance with the jury's verdict.

SO ORDERED.